# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| James D. Tunick, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:10-CV-59 JVB |
| ) | |
| Indiana Gaming Commission Agents ) | |
| Chad Williams and Patricia Yelkich, and ) | |
| The Majestic Star Casino II, Inc., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

In this § 1983 lawsuit, Plaintiff James Tunick claims Indiana Gaming Commission ("IGC") Agents Chad Williams and Patricia Yelkich violated his civil rights during his arrest at the Majestic Star II Casino on March 28, 2008. Furthermore, he brings an Indiana state law claim that the IGC agents maliciously prosecuted him. He also alleges that the Majestic Star casino and IGC officers conspired to deprive him of his civil rights, violating 48 U.S.C. § 1985.

Defendants moved for summary judgment. They argue that Agents Williams and Yelkich had probable cause to arrest Plaintiff, and they are entitled to qualified immunity from suit. They further assert that Plaintiff's malicious prosecution claim must fail if Defendants had probable cause to arrest Plaintiff. Finally, Defendants maintain that Plaintiff alleges no facts to support a conspiracy between the IGC and The Majestic Star Casino.

Plaintiff responded to the motion, asserting that there are triable issues of fact regarding probable cause in his arrest. He argues there were two arrests both lacking probable cause, one at the casino exit ramp and a second after he signed a release bond inside the IGC offices. Plaintiff

does not respond to Defendants' assertion that Plaintiff lacks evidence for the §1985 conspiracy claim. As such, Plaintiff concedes there are no factual disputes relating to that claim.[1]

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe

---

[1] "The Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion." N.D. Ind. L.R. 56.1(b).

2

all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Summary of Events**

Plaintiff played poker for several hours at the Majestic Star II casino on March 28, 2008. (DE 38-1 at 24.) He became annoyed with a female player at the poker table, and called her a "bitch" to another patron. (*Id*.) Shortly afterward, casino employees working the floor notified casino security officers about a disorderly patron. (DE 38-3 at 20.) The security manager dispatched two security employees to evict Plaintiff from the casino. (*Id*. at 23–25.) The security employees escorted Plaintiff towards the casino exits where, according to Plaintiff, he may have cursed "this is bullshit." (DE 38-1 at 37.) The casino's eviction procedure includes checking a person's identification in order to bar them from the property in the future. (DE 38-3 at 11.) Signs posted in the casino alert patrons that casino officials may ask for ID at any time. (DE 38-1 at 38.) Plaintiff refused to give his identification, and the casino employees called IGC agents to assist. (DE 38-1 at 38.) Agents Williams and Yelkich then approached Plaintiff and the casino security employees. (DE 38-4 at 50.)

Agent Williams and identified himself as a law enforcement and demanded Plaintiff's ID. Plaintiff refused to display it. Agent Williams again asked for the ID, saying that he would arrest Plaintiff if he did not comply. (DE 38-1 at 42–44.) In response, Plaintiff put his hands out as if to be handcuffed, and then turned away when Agent Williams began to arrest him. (DE 38-6 at

3

15:18.) Agent Williams then handcuffed Plaintiff, and both IGC agents escorted Plaintiff to the IGC offices on the casino property. Once there, IGC agents took Plaintiff's ID and patted him down for weapons. (DE 38-2 at 40.)

Plaintiff stayed in the offices for a several hours while IGC agents checked his background for outstanding warrants and criminal history. (DE 38-1 at 47.) IGC agents released Plaintiff's handcuffs to allow him to sign his release bond. The bond contained a promise to appear if criminal charges were filed. Agent Williams told Plaintiff he would not be charged at this time. Plaintiff signed the bond, then immediately stood up and spoke out against his arrest. (*Id*. at 56.) IGC agents ordered him to sit down, and he did not comply. (*Id*.) Defendants testify that he then attempted to exit the office and shoved into Agent Yelkich. (DE 38-2 at 46; DE 38-4 at 84–87.) Shortly afterward, Agent Williams again handcuffed Plaintiff, and announced that he would be going to jail. Plaintiff was taken to jail roughly an hour later. (*Id*. at 60.)

An Indiana prosecutor filed criminal charges against Plaintiff for disorderly conduct, resisting law enforcement, and battery of a law enforcement officer. (DE 38-5.) Plaintiff entered a pre-trial diversion program, where the charges would be dismissed if he wrote a letter of apology and did not commit further offenses for a time period. (DE 38-5.) Plaintiff complied with the terms of the program and the charges were dismissed.

**C. Section 1983 Standards**

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of his rights guaranteed by the Fourth Amendment. Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687 n.9 (1999). A cause of

action may be brought under § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

The plaintiff must demonstrate that the defendant personally participated in or directly caused the deprivation of his or her rights. *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). The doctrine of *respondeat superior* cannot be used under § 1983 to create supervisors' liability due to the misconduct of subordinates. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Instead, the plaintiff must demonstrate that the defendant was personally responsible by "act[ing] or fail[ing] to act with a deliberate or reckless disregard of plaintiff's constitutional rights," or that "the conduct causing the constitutional deprivation occur[red] at [the defendant's] direction or with [the defendant's] knowledge or consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Qualified immunity, a primary defense to a claim under § 1983, shields officers from liability when they are "performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Delaney v DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[P]laintiff bears the burden of showing the existence of the allegedly clearly established constitutional rights." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). Police have qualified immunity for actions taken during arrest if their conduct does not

violate statutory or constitutional safeguards that a reasonable person would know, and their conduct is not so egregious no reasonable person could believe it did not violate clearly established rights. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). A Plaintiff can dissolve qualified immunity by showing a clearly analogous case establishing a right to be free from the specific conduct, or by showing that no reasonable person would believe the conduct did not violate a protected right. *Id*.

**D. IGC Agents Have Qualified Immunity from Suit for the False Arrest Claims.**

Defendants argue that Plaintiff's arrest was based on probable cause, that his detention was continuous until his release from Lake County jail, and that they have qualified immunity from suit. Plaintiff counters that his initial arrest lacked probable cause, and his re-cuffing after signing a release bond formed a second arrest also lacking probable cause.

**(1)** *Plaintiff did not demonstrate that his initial arrest violated rights a reasonable person would know, or that the arrest was so egregious no reasonable person would believe it did not violate a protected right*

To overcome an officer's qualified immunity defense, the plaintiff bears the burden to demonstrate both a rights violation and that the clear-establishment of that right. *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). Probable cause for an arrest exists when law enforcement officers have reasonably trustworthy information that would cause a prudent person to believe a suspect committed an offense. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993). Facts and circumstances are considered as they appeared to the arresting officers. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

IGC agents have broad authority to enforce IGC policies under Indiana law.[2] The IGC can evict or exclude riverboat patrons that, in its judgment, interfere with the orderly conduct of gambling operations. Ind. Code § 4-33-4-7. Indiana law requires casinos to maintain patron eviction criteria, and mandate that disorderly conduct be a basis for eviction. 68 Ind. Admin. Code § 6-2-1. Further, casinos must keep an "eviction list" containing the excluded person's name, date-of-birth, address, physical description, and current photograph. 68 Ind. Admin. Code § 6-2-4. The Majestic Star II Casino's eviction procedure includes examining an evicted person's identification, and posted signs alert patrons of the requirement to show their ID upon request.

Plaintiff fails to show that the IGC Defendants would reasonably know that Plaintiff's arrest under these circumstances violated the Fourth Amendment. The IGC has broad authority to enforce conduct in the highly regulated casino environment. Plaintiff fails to point to any case in this circuit or elsewhere that would place the IGC agents on notice that arrest for reported disorderly conduct or failing to present ID would violate the Fourth Amendment.

Plaintiff failed to show that his arrest was so egregious no reasonable person could believe it did not violate an established right. It is undisputed that casino employees reported that Plaintiff was acting disorderly to the IGC Defendants. When Agent Williams identified himself and confronted Plaintiff for his ID, he refused to display it. When pressed for his ID, Plaintiff held out his hands for handcuffs. The IGC has considerable discretion to evict casino patrons, and casinos are required by law to gather identification information as part of that process. Indiana law mandates casino eviction for disorderly behavior, and the casino's eviction procedure requires information generally contained on photo identification. IGC agents have full police powers to enforce IGC policy, including policies of eviction. Plaintiff's refusal to

---

[2] "A gaming agent is vested with full police powers and duties to enforce this [riverboat gambling] article." Ind. Code § 4-33-4.5-1.

cooperate with eviction procedures violated IGC policy. As such, the Court finds that the IGC Defendant's arrest of Plaintiff for failing to present ID or for reported disorderly conduct was not so egregious that no reasonable person would believe it did not violate the Fourth Amendment. Therefore, the Court finds that Plaintiff failed to meet his burden to overcome the IGC Defendants' qualified immunity.

Agents Williams and Yelkich have are entitled to summary judgment regarding Plaintiff's false arrest claim for his initial detention. As such, the Court need not reach the question of whether probable cause existed, though the undisputed facts indicate it did.

### (2) *Plaintiff did not demonstrate his detention at the IGC offices violated rights a reasonable person would know, or that the detention was so egregious no reasonable person would believe it did not violate a protected right*

Plaintiff argues that he was arrested twice without probable cause, once on the casino entrance ramp and again inside the IGC offices. Plaintiff relies on *Xing Qian v. Kautz*, 168 F.3d 949 (7th Cir. 1999) to illustrate his argument. In that case, a man suffering from recurrent dizziness lost control of his car and collided with a wooden planter. *Id*. at 951. Police, suspecting a DUI violation, arrested him and transported him to both the police station and a hospital for breath and blood tests. *Id*. Police then took him to check into a hotel, planning to re-arrest him there if the tests showed him to be under the influence. *Id*. The man refused to book into the hotel, and was immediately re-arrested. *Id*. at 952. That Court of Appeals for the Seventh Circuit found that a reasonable person at the hotel would believe he was free to leave, and the re-arrest lacked probable cause. Relying on this, Plaintiff argues that, after he signed a release bond and police told him he would not be charged, a reasonable person would believe he was free to go, and his re-handcuffing constituted a second arrest not based on probable cause. Plaintiff asserts

that the issue of probable cause for this "second arrest" is an issue of fact to be determined by a jury.

Defendants argue that Plaintiff's arrest was continuous from his initial detention at the casino until his release from Lake County jail. Custody is determined objectively in light of the totality of the circumstances, with the inquiry focused upon whether a reasonable person would understand there was a formal restriction on his movement. *Quin v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999). Defendants highlight that Plaintiff was at the relevant times confined to a restricted area of the barge, in a room with multiple law enforcement officers. On standing up, officers ordered him to sit back down. They submit that no reasonable person —even after being un-handcuffed to sign a release bond—would believe he was free to leave under the circumstances.

To overcome an officer's qualified immunity defense, a plaintiff must demonstrate both violation of a constitutional right, and the clear establishment of that right. *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). Plaintiff offers no clearly analogous case law that the IGC agents should have been on notice that un-handcuffing a man, inside police offices, to sign a release bond constituted a break in custody, and separate probable cause was required to re-handcuff him. Plaintiff's reliance on *Xing Qian* is misplaced. The suspect in that case was escorted by police to a hotel specifically for the purpose of temporary release. This is markedly different from the release of restraints and signature of a release bond while confined deep within law enforcement offices. Similarly, the evidence, viewed in light most favorable to Plaintiff, shows that the IGC agents re-handcuffed Plaintiff after he refused to sit down while confined inside law enforcement offices. The Court finds this conduct is not so egregious that no reasonable person would believe it did not violate an established right.

9

The Court finds that Plaintiff failed to show his confinement was egregious or violated a clearly-established right. Therefore, the Court need not reach the question if signing a release bond constituted a break in custody. Furthermore, the Court finds the IGC agents have qualified immunity from this false arrest claim. As such, the Court grants summary judgment regarding Plaintiff's second false arrest claim for both IGC Defendants.

**E. Plaintiff Concedes His Conspiracy Claim**

IGC Defendants maintain that Plaintiff showed no evidence that Majestic Star Casino employees and IGC agents conspired to violate his civil rights. Plaintiff did not respond to this assertion in his summary-judgment response. Through this silence, Plaintiff concedes a lack of evidence for the claim. The Court grants summary judgment to all Defendants for that claim.

**F. The Indiana Tort Claims Act Bars Plaintiff's Malicious Prosecution Claim**

Defendants assert that Plaintiff's malicious prosecution claim is incorporated into his § 1983 claim for false arrest. Plaintiff did not address this assertion in response, though he described that claim as "state law" in the complaint. The Court finds the claim arises under Indiana state law, and the Court has supplemental jurisdiction over the claim under 28 U.S.C. §1367.[3]

The Court finds that Indiana law bars Plaintiff's claim for malicious prosecution. If Indiana government employees initiate prosecution within the scope of their employment, the Indiana Tort Claims Act shields them from any resulting liability. Ind. Code § 34-13-3-3; *see*

---

[3] Title 28 U.S.C. §1367 allows federal jurisdiction over state law claims if the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." The Court finds that Plaintiff's malicious-prosecution claim relates sufficiently to the federal §1983 false arrest claim to make supplemental jurisdiction proper.

*Butt v. McEvoy*, 669 N.E.2d 1015 (Ind. Ct. App. 1996) (holding that the ITCA confers immunity upon police officers in actions for malicious prosecution). The Court finds the Defendants, as gaming officials, acted in the scope of their employment when they initiated the prosecution against Plaintiff. As such, they are immune from suit for malicious prosecution. Therefore, the Court grants summary judgment for the Defendants on this claim as well.

**G. Conclusion**

The Court finds that the IGC Defendants have qualified immunity from suit for both § 1983 false arrest claims. The Court further finds that Plaintiff conceded his §1985 conspiracy claim. Finally, the Court finds that Indiana law bars his state-law claim for malicious prosecution. As such, the Court enters summary Judgment for the Defendants on all claims.

SO ORDERED on July 29, 2011.

s/Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge  
Hammond Division